McKinney, J.
delivered the opinion of the court.
The defendants are the proprietors of a toll bridge on Wolf river, and a levee across the Wolf river bottom, on the road leading from Memphis to Raleigh, under a grant of privilege by the county court of Shelby. The plaintiff in error, on the 12th day of May, 1848; crossed said bridge and levee, but refused to pay the toll, which, by the order of the county court, the defendants were entitled to demand and receive. And to recover such toll, this action was commenced before a justice of the peace.
The defence attempted to be set up in the court below was, that the defendants have failed to build and construct the bridge and levee in conformity with the requirements of the charter granted by the county court, and the laws of the State; and that at the time the commissioners, appointed by the county court to superintend said bridge and levee, authorized the defendants to commence collecting toll, they were wholly insufficient for the public convenience and in bad repair; and that on the day this suit was commenced, they were in still worse condition. To support this defence, evidence was offered on the trial, which the court refused to admit. We think it clear that the defence, of which the plain *425 tiff in error attempted to avail himself in the circuit court, was wholly inadmissible: and, consequently, that the evidence offered was properly rejected.
The act of 1835, ch. 29, sec. 1, confers upon the several county courts full power and authority, upon proper application being made, to grant the privilege of erecting toll bridges and causeways, and other local improvements, within their respective counties; and to fix the term to which such privilege shall extend; and also fix the toll and rate of charges, which shall be allowed in such cases; and to impose such restrictions, limitations and conditions, as in their discretion, shall seem right and proper. By another act of the same session, (ch. 54, sec. 1,) the several county courts are required to appoint three commissioners, or superintendents, “whose duty it shall be to look over the several turnpikes and toll bridges, within their respective counties, knd see that the same are kept in such repair as is required by law; and whenever, in the opinion of said superintendents, the said turnpikes or toll bridges shall manifestly be in such condition, a majority of said commissioners or superintendents shall have power to open the gates of said public ways, until the same shall be put in good order and condition.” By the sixth section the commissioners, (who are to be unconnected with' the owners, and not interested in profits or tolls arising from the road or bridge,) are required to take an oath in open court, at the time of their, appointment, that in the discharge of their .duties as commissioners, they “will do equal and impartial justice between the State, or county, as the case may be, and the owner or owners.” The 'second section declares it a misdemeanor, subject to indictment or presentment, and to be punished by a *426 fine not exceeding one hundred dollars, and imprisonment not more than ten days, to demand or receive any toll, or to close any gate, or to put any other obstruction in any such turnpike road or toll bridge, during the time that the gates are required to be kept open by the commissioners.
From the foregoing provisions, the conclusion cannot be resisted, that the adjudication of the commissioners, that the turnpike road, or bridge, is in conformity with the charter, or is in such repair as is required by law, was intended to be conclusive, at least as between the proprietor and persons passing on such road or bridge, of the right of the former to demand and receive toll from the latter. The argument opposed to this construction of the law would lead to gross absurdity. Can it be supposed for a moment, that it was intended to put it in the power of every one who passed the road or bridge, to force the owner into a vexatious and expensive litigation for the purpose of establishing his right to receive toll, by proving that the road or bridge was exactly conformable to the charter, or the requirements of the law? If such were the law, who would be guilty of the folly of constructing a turnpike road or toll bridge?
The law has made ample provisions for holding the owners of turnpike roads and bridges responsible for neglect of the duties enjoined upon them. Aside from the 4th sec. of the act of 1835, ch. 54, which provides for a forfeiture of the charter, the act of the same session, ch. 66, sec. 1, declares that, “All proprietors of turnpike roads and toll bridges, or the keepers thereof, or either of them, shall be subject to be punished for permitting their roads or bridges to remain out of repair, in the *427 same manner and under the same rules, regulations, and restrictions that owners of public roads are now subject to, according to the laws of this State.” Under this provision, if the road or bridge be not in the repair required by law, the proprietor, or keeper, may be indicted. In addition, he may be made subject to the penalty of five dollars, given by the act of 1804, ch. 1, sec. 14, to any one who will sue for the same, for allowing the road or bridge to remain out of repair during the space of fifteen days; unless hindered from repairing by extreme bad weather. And furthermore, the owner is liable to an action at common law for the damages sustained by any person, or persons, in consequence of the road or bridge being out of repair.
The result of our opinion is, that the court did not err in refusing to admit the evidence offered.